PAUL J. KELLY,

           Plaintiff,

 v.

SIGNET STAR RE, LLC,             3:10-CV-00551 (CSH)

           Defendant.

**RULING ON PLAINTIFF AND DEFENDANT'S**
**CROSS MOTIONS FOR SUMMARY JUDGMENT**

**HAIGHT**, Senior District Judge:

## I.    Introduction

      This is an employment discrimination case.  Plaintiff Paul J. Kelly (hereinafter "Plaintiff")

charges his former employer, Defendant Signet Star Re, LLC (hereinafter "Defendant"), now known

as Berkley Re America, LLC, with discriminating against him because of his age in violation of the

Age Discrimination in Employment Act of 1967 (hereinafter the "ADEA"), 29 U.S.C. § 621, et seq.

[Doc. 7].  Plaintiff also alleges claims against Defendant for age discrimination under Connecticut's

Fair Employment Practices Act (hereinafter "CFEPA") and alleges common law claims against

Defendant for intentional infliction of emotional distress and breach of the covenant of good faith

and fair dealing.[1]  Plaintiff seeks damages, attorney's fees and costs, and other equitable relief.  *Id.*  Defendant denies all liability, and both Defendant and Plaintiff have now cross-moved for summary judgment.  *See* [Doc. 50] and [Doc. 53].

## II.    Background

The following facts, for the most part undisputed and culled from the pleadings and exhibits thereto, are relevant to the current motion.  Plaintiff was hired by Defendant as a Vice President and underwriter of Signet Star Re, LLC in August of 2002.  [Doc. 56-1]; *see also* [Doc. 56-2] at 130 (Plaintiff states in deposition that he was hired on August 27, 2002.  Plaintiff's offer letter, which was signed by Gordon J. Olver, Executive Vice President and the individual to whom Plaintiff directly reported throughout his time as Defendant's employee, stated that Plaintiff's initial salary would be $160,000 on an annualized basis, and that Plaintiff would be eligible for a performance bonus annually along with an initial salary review in January of 2003 and twenty days of vacation per year.  *Id.*  Plaintiff was fifty-five years of age at the date of his hire by Defendant, [Doc. 56-2], and was employed by Defendant as an underwriter for approximately seven and a half years before his employment termination in January of 2010.  His annual salary upon termination was $175,000, and he reports that his annual bonus averaged in the range of $25,000 per year. [Doc. 7] at ¶¶ 10-11.

---

[1]    In his Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiff states that he "does not argue [therein] that Defendant breached the covenant of good faith and fair dealing." [Doc. 71] at 2 n.2.  It is not clear to the Court whether Plaintiff is attempting to indicate that he wishes to withdraw the claim in his Amended Complaint (i.e., Count Three) for the breach of the covenant of good faith and fair dealing, which is how Defendant construes this statement.  *See* [Doc. 76] at 2 n.1 ("It should be noted that Plaintiff has withdrawn ... his claim for breach of the covenant of good faith and fair dealing.").  However, for reasons addressed within this Ruling, this question is moot given that the Court will not address or for that matter reach any of Plaintiff's state law claims, and instead dismisses them without prejudice.

Prior to his job termination, Plaintiff claims that he was "subjected to a series of continuous adverse employment actions ... including but not limited to unequal treatment on account of his age, denial of fair and equal bonus compensation based on his factual performance, a negative performance review, forced resignation and wrongful termination of employment." [Doc. 7] at 12.[2] Plaintiff further avers that Defendant's statement that "the reason for [Plaintiff's individual] disciplinary action was poor performance" is both "factually baseless and without merit," and that Defendant's proffered "reasons for [any such] adverse actions are pretextual and false." *Id.* at 12-13.

_____

[2] Plaintiff also claims in his Amended Complaint that "Defendant exhibited a continuous pattern and practice of age discrimination ... against older employees [which was] standard operating procedure at the company;" that "Defendant also maintained an equal employment opportunity policy that was used to discriminate against older workers in favor of hiring, retaining, promoting and employing younger workers, especially ones that looked younger;" that "Defendant would use unequal and factually baseless performance management techniques which targeted older employees with the goal of forcing them to quit their employment or develop a for cause basis to terminate their employment, while substantially younger and similarly situated employees were not treated in the same matter;" and that "such unlawful continuous activity goes back as far as March 2009, when Defendant capped vacation benefits to twenty days per year, even though older workers were [prior to that time] permitted an additional five days, up to twenty-five days paid vacation" per year. [Doc. 7] at 13.

However, in his Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiff states that he "does not assert an argument for disproportionate impact, including any discussion on the Defendant's change in vacation policy as having a disproportionate impact on older employees." [Doc. 71] at 2 n.2. The Court therefore considers this argument, as raised in Plaintiff's Amended Complaint, to be waived. Defendant agrees with the Court's analysis. *See* [Doc. 76] at 2 n.1 ("Plaintiff has withdrawn his claim that the change in Defendant's vacation policy had a disparate impact on older employees...."). The same is true for Plaintiff's contention that Defendant's May of 2009 marketing initiative, described and discussed *infra*, "was [a] device used to reduce headcount based on age," [Doc. 71] at 3, despite the fact that this allegation is again made in the document in which Plaintiff states that he "does not assert an argument for disproportionate impact." *Id.* at 2 n.2.

The Court notes, however, that even if Plaintiff had not waived these claims, the Court does not find that there is sufficient evidence for them to survive Defendant's Motion for Summary Judgment.

Jon Schriber, already an employee of Defendant, was promoted to President and CEO of Signet Star Re, LLC in the summer of 2008. It was to Schriber that Olver, Plaintiff's supervisor, reported. At various times both Schriber and his predecessor, Craig Johnson, expressed dissatisfaction with Plaintiff's overall performance. In May of 2009, a new marketing strategy was announced for all underwriters whereby, in Defendant's words, "the team would move away from territorial assignments to targeting of individual accounts by individual underwriters ... This change was implemented in recognition of the fact that many underwriters had meaningful contacts and/or relationships which were not being exploited to the company's advantage merely because they were outside of the territory assignment of those underwriters." [Doc. 56] at 4. Defendant states that "[o]nce this strategy was implemented, performance expectations were raised not just for Plaintiff, but for every underwriter on the team." *Id.* Plaintiff contends that "Defendant never provided training nor timelines and goals ... that employees had to adhere to." [Doc. 71] at 3. Defendant counters that "[w]hile Plaintiff is correct that concrete deadlines were not set, ... Schriber sent all underwriters a number of follow-up emails after the May 2009 meeting in which he described the urgency of the new strategy," using words including "critical" and "urgent" to describe the initiative. [Doc. 56] at 5.

It was not until August of 2009, when Plaintiff was informed by Olver that his marketing activity had been deemed insufficient, [Doc. 7] at ¶16, [Doc. 13] at ¶16, that Plaintiff began to make efforts to follow and contribute to the new marketing initiative. Plaintiff provides several reasons for his lack of marketing-related performance between May and August of 2009, for example stating that his "accounts largely required the most intensive underwriting activity[] just as this marketing initiative was getting underway," and that his "concentration on the dominant underwriting aspects

4

of his position was, without question," in Defendant's best interest. [Doc. 7] at 5. Plaintiff also alleges that "Defendant prevented [him] from attending conferences and special events that would have increased his marketing visits under the new marketing plan." [Doc. 71] at 4. Despite Plaintiff's contention that he began to make efforts subsequent to August of 2009, Defendant reports that "Plaintiff recorded the third lowest number of marketing visits for the fourth quarter of 2009, as well as the lowest total number of visits for the entire year among his peers...." [Doc. 56] at 7.

Before Labor Day of 2009, Plaintiff states that he was "told he had to move to a junior office to make way for a new employee who was arriving at the end of the following week." [Doc. 7] at 6. Plaintiff states that although the reason given to him was that "Schriber wanted to keep the underwriting staff close together," Plaintiff believes that this explanation "was untrue as moving others would have better accomplished that." *Id.* Plaintiff therefore claims that this "office space move was a discriminatory adverse employment action taken on account of Plaintiff's age." *Id.* The new employee who was assigned to Plaintiff's former office space was Tony Cocozza, then aged approximately fifty-nine or sixty, who had just been hired by Schriber. [Doc. 56] at 14 n.2. To further demonstrate that he was discriminated against due to his age, Plaintiff points to an email sent to Schriber by Fred Madsen, another high-ranking employee of Defendant, in which Madsen indicated that he would not be attending another employee's retirement party, but that Schriber should "[l]et [Madsen] know when [Plaintiff's] retirement party is, though," since Madsen "might show up for that one." *See, e.g.,* [Doc. 56-2] at 192. Plaintiff states that he had no plans to retire at that moment, and that he found Madsen's emailed statement to be a clearly age-related remark.

Schriber and Olver also discussed Plaintiff's 2009 performance review several times toward the end of 2009. In these communications, Schriber gave Olver feedback regarding Olver's initial

evaluations of Plaintiff's performance, which Schriber indicated he felt were not honest enough.

Schriber accordingly suggested that Plaintiff's performance evacuation be revised in order to reflect

what Schriber believed was a more accurate assessment of Plaintiff's efforts and abilities for the

period of time in question. Plaintiff avers that Olver risked his own job in order to defend Plaintiff

and Plaintiff's performance to Schriber, and that Olver did not agree with the performance evaluation

for 2009 that was ultimately rendered for Plaintiff. Both Defendant and Olver have denied these

claims. Plaintiff also states that in January of 2010, Schriber told Plaintiff that he "lacked energy"

and did not have "fire in his belly." [Doc. 71] at 5. Later that month, Plaintiff was formally

"informed that he was terminated from his employment and told not to return to work." [Doc. 7] at

3.

## III.    Standard of Review

The standards for summary judgment are familiar. Summary judgment is appropriate when

"there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment

as a matter of law." F. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256

(1986). The role of a district court in considering a motion for summary judgment is therefore "not

to resolve disputed questions of fact but only to determine whether, as to any material issue, a

genuine factual dispute exists." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). A party

moving for summary judgment bears the burden, on the claims made within that motion, of showing

that it is entitled to summary judgment. Once it has satisfied this burden, the party opposing that

particular summary judgment motion "must set forth specific facts demonstrating that there is a

genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir 2009) (internal quotation marks

omitted). A dispute about a genuine issue of fact exists for summary judgment purposes where the

evidence is such that a reasonable jury could decide in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In making its determination on a summary judgment motion, a trial court will resolve all ambiguities and draw all inferences contained within that motion in favor of the party against whom summary judgment is sought. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 274 (2d Cir. 2009). It is "[o]nly when reasonable minds could not differ as to the import of the evidence" that summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). When "a motion for summary judgment is properly supported by documentary and testimonial evidence ... the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of fact." *Marczeski v. Gavitt*, 354 F.Supp. 2d 190, 193 (D. Conn. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

In order to present a "genuine issue of material fact" the party opposing a particular motion for summary judgment must therefore present contradictory evidence "such that a reasonable jury could return a verdict for [that] party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. Consequently that party must present affirmative evidence in order to defeat a properly supported summary judgment motion. As the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," *id.* at 247-48, if the party opposing a particular summary judgment motion submits evidence that is "merely colorable," summary judgment may be granted. *Id.* at 249-50. In sum, a "complete failure of proof concerning an essential element of [that] party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. at 322.

In general "when ruling on a motion for summary judgment in an employment discrimination case, where intent is at issue, the Court 'affirms judgment in favor of an employer sparingly because careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination.'" *Bogues v. Town of Trumbull*, 383 F.Supp. 2d 348, 352 (D.Conn. 2005) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003)). However, as the Second Circuit has noted, "it is ... beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," as the "salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to ... other areas of litigation." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (citation omitted). Ultimately, then, "[t]rial courts should not treat discrimination differently from other ultimate questions of fact," *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000), and "[s]ummary judgment against a plaintiff in an employment discrimination case is appropriate if the plaintiff offers only unsupported assertions, conjecture or surmise, or conclusory statements to support an essential element of her case." *Soderberg v. Gunther Intern., Ltd.*, No. 3:02-CV-02010, 2004 WL 57380 at *4 (D.Conn. 2004) (internal quotation marks and citation omitted).

In the case at bar, this Court's subject matter jurisdiction depends upon whether Plaintiff asserts valid factual claims under the ADEA, the only federal claim contained within Plaintiff's Amended Complaint. The Court accordingly addresses Plaintiff's four claims in order, beginning with Plaintiff's ADEA claim.

## IV. ADEA Claim

Under the ADEA, "[i]t shall be unlawful for an employer ... to discharge any individual or

otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). This prohibition protects employees who are at least forty years of age. 29 U.S.C. § 623(a). Defendant contends that Plaintiff, who was sixty-one years old at all relevant times to the lawsuit, was terminated not for his age, but rather for performance-based reasons, and, moreover, that Plaintiff fails to produce any evidence that he was terminated because of age. Plaintiff, in turn, argues that all of his previous performance evaluations had been positive, that he was a good contributor to the Defendant company, and that he was terminated because of his age.

ADEA claims are evaluated and governed by the burden-shifting framework set forth by the United States Supreme Court forty years ago in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See, e.g., O'Hazo v. Bristol-Burlington Health Dist.*, 599 F.Supp. 2d 242, 256 (D.Conn. 2009); *Soderberg v. Gunther International, Ltd.*, 3:02-CV-002010, 2004 WL 57380 at *2 (D.Conn. Jan. 7, 2004); *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 91 (2d Cir. 2001). Under this burden-shifting framework, "a plaintiff must satisfy the minimal burden of making out a prima facie case of discrimination; the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions; and the final burden rests on the plaintiff to prove not only that the proffered nondiscriminatory reason was pretextual but also that the defendant discriminated against the plaintiff." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d at 91 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)).

If and once "the plaintiff has met this burden of establishing a prima facie case (which is generally not understood by courts to be onerous)," the defendant must merely *"articulate* (not *prove*), via admissible evidence, a legitimate reason for the employment decision.... At that point, the plaintiff must have the opportunity to demonstrate that the employer's proffered reason was not

the true reason for the employment decision," which may be accomplished "either by persuading the trier of fact that a discriminatory reason more likely than not motivated the employer, or by persuading the trier of fact that the employer's proffered explanation is unworthy of belief." *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180-81 (2d Cir. 1992) (internal quotation marks and citations omitted) (emphasis in original); *see also Weichman v. Chubb & Son*, 552 F. Supp. 2d 271, 289-90 (D. Conn. 2008) (applying *McDonnell Douglas* analysis to FMLA retaliation claim).[3]

As this Circuit has emphasized in the past, "courts [have] recognized that more than one reason can motivate an employer's adverse action"; thus, when applying a *McDonnell Douglas* analysis, courts have "said that [a] plaintiff had to prove" under the third prong of the analysis – in which a plaintiff must demonstrate that the employer's proffered reason was not the true reason for the employment decision – that the allegedly "impermissible reason, even though not the only reason for an adverse employment decision, was a 'substantial' or 'motivating' factor," or, at the least, "'made a difference' in the decision." *Fields v. New York State Office of Mental Retardation and Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir. 1997) (in discussing the application of the *McDonnell Douglas* analysis to an adverse employment discrimination claim arising under Title VII)

_____

[3] Applying the *McDonnell Douglas* analytical framework to summary judgment standards in Title VII antidiscrimination cases, for example, the Second Circuit has noted:

> At the summary judgment stage, if the plaintiff presents at least a minimal amount of evidence to support the elements of the claim, the burden of production shifts to the defendant to proffer a legitimate ... reason for the adverse employment action. If the employer produces such evidence, the employee must, in order to avoid summary judgment, point to evidence sufficient to permit an inference that the employer's proffered ... reason is pretextual.....

*Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552-53 (2d Cir. 2010), (emphasis added) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)), (internal quotation marks and citations omitted).

(quoting *Sherkow v. Wisconsin*, 630 F.2d 498, 502 (7ᵗʰ Cir. 1980), *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989) and citing *cf. Paolillo v. Dresser Industries, Inc.*, 865 F.2d 37, 40 (2d Cir. 1989), *as amended,* 884 F.2d 707 (2d Cir. 1989) (addressing this standard as it applies to a court's *McDonnell Douglas* analysis of alleged discrimination under the ADEA)); *see also, e.g., Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166 (same).

"[A]lthough the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *Nieves v. Angelo, Gordon & Co.*, 341 Fed. Appx. 676, 678 (2d Cir. 2009) (citation omitted). However, a plaintiff claiming age discrimination under the ADEA "cannot defeat a summary judgment motion based on 'purely conclusory allegations of discrimination, absent any concrete particulars.'" *Id.* (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)). A plaintiff also may not solely rely upon "[i]solated, minor acts or occasional episodes" that "do not warrant relief [under the ADEA]." *Id.* (quoting *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)). It is therefore not sufficient for a plaintiff to show that a defendant's actions were in poor taste or questionable, or even that a defendant made inaccurate statements about plaintiff; rather, in order to meet the third prong of this burden-shifting analysis, a plaintiff must a "provide[] evidence that [a] defendant was motivated by discriminatory reasons in" acting in such a way." *Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314, 318 (2d Cir. 2005) (emphasis added).

### A.    Plaintiff's Prima Facie Case

In order to make out a prima facie case of discriminatory employment discrimination under

the *McDonnell Douglas* test and its progeny, and thus under the ADEA, Plaintiff must show that he

was (1) within the protected age group; (2) qualified for the position; (3) discharged; and (4) that

such discharge occurred under circumstances giving rise to an inference of discrimination. *Nieves*

*v. Angelo, Gordon & Co.*, 341 Fed. Appx. 676, 678 (2d Cir. 2009); *Carlton v. Mystic Transp., Inc.*,

202 F.3d 129, 134 (2d Cir. 2000); *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 559 (2d Cir. 1997).

As this Circuit has noted, the "qualification necessary to shift the burden to defendant for an

explanation of the adverse job action is minimal...." *Slattery v. Swiss Reinsurance America Corp.*,

248 F.3d at 92 (citation omitted).

Defendant does not contest the first three elements of Plaintiff's prima facie claim, but

contends that "the fourth element is in play; and Plaintiff clearly failed to adduce evidence, through

discovery, sufficient to generate an inference of discrimination, as required to satisfy that final

element of proof." [Doc. 56] at 26; *see also* [Doc. 68] at 2. This is because, Defendant avers, "a

plain reading of the facts ... makes clear that the majority of Plaintiff's so-called 'evidence' consists

of conclusory statements and his subjective disagreement with management's perception of his

performance, which cannot raise an inference of discrimination." *Id.* Moreover, Defendant

contends, even if Plaintiff were capable of, and succeeded in, proving every element of his prima

facie case, "the record is devoid of evidence from which a reasonable jury could conclude that the

legitimate reasons advanced by Defendant for the decisions at issue are pretextual, much less is there

evidence that the 'but for' reason" for Plaintiff's employment termination "was Plaintiff's age." *Id.*

As Defendant does not dispute that Plaintiff can meet the first three elements of a prima facie

claim, the only element at issue is the fourth: whether there are circumstances which give rise to an

inference of discrimination. [Doc. 56] at 26; *see also* [Doc. 68] at 2. The chief argument Plaintiff

puts forth in order to support his claim that the adverse employment actions occurred under circumstances which give rise to an inference of age-based discrimination is that Plaintiff was "replaced by substantially younger employees" subsequent to his termination. [Doc. 57] at 10. It does not matter whether these individuals themselves were old enough to have been protected by the ADEA; as the United States Supreme Court noted nearly twenty years ago, a plaintiff need only show that he was replaced by an individual substantially younger than he in order to establish a prima facie case of age discrimination, and not that the individual who replaced him was not within the protected class, which in the ADEA context is to say over the age of 40. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). The Supreme Court explained that "the fact that the replacement is substantially younger than the plaintiff is a more valuable indicator of age discrimination[] than whether or not the replacement was over forty years of age at the time at which he assumed the plaintiff's former job responsibilities." *Id.*

The Supreme Court has also cautioned, however, that an inference of age discrimination cannot be drawn from the replacement of one employee with another employee who is "insignificantly younger." *Id.* While many federal courts have addressed it, the question of what constitutes an insignificant gap in age has not been conclusively established. In *O'Connor v. Consolidated Coin Caterers, Corp.*, the Supreme Court held that an age difference of sixteen years could support an inference of age discrimination; in 2000 and 1997 respectively, this Circuit found that age differences of 18 and 25 years and age differences of 13 and 26 years supported inferences of discrimination. *See Carlton v. Mystic Transp.*, 202 F.3d 129 (2d Cir. 2000) and *Stratton v. Department for the Aging*, 132 F.3d 869, 879-80 (2d Cir. 1997).

In support of his claim, Plaintiff contends that after he "was terminated, [Gordon] Olver,

[Dionne] Chisholm, and Joe Walsh, all substantially younger employees, took over his job duties and clients." [Doc. 57] at 11; see also, e.g., [Doc. 51-1] at 92.  According to Defendant, however, Gordon Olver was then age 52; Dionne Chisholm was then age 39; and Joe Walsh was then age 55.  Perhaps even more critically, Defendant states and demonstrates that "Plaintiff was not 'replaced'; rather, his duties were *absorbed* by incumbent employees." *See, e.g.,* [Doc. 68] at 5 (emphasis added).  Gordon Olver's testimony echos this contention. *See* [Doc. 51-1] at 92-95.  Given that Plaintiff was 61 years of age at the time of the adverse employment actions which are the subject of his Complaint, the Court is skeptical as to whether an alleged replacement with two of these three named employees, who were roughly nine and six years younger than Plaintiff at the time at which he was terminated, could be found to constitute a replacement by individuals "substantially younger" than Plaintiff. Furthermore, this Court notes a difference between being *replaced* by another individual and having one's job responsibilities *absorbed* by individuals already employed by Defendant, and these responsibilities constituting new aspects of these individual's *already-held* positions.  By Gordon Olver's account, the company did not "hire a replacement for Plaintiff's job." [Doc. 51-1] at 94. *See, e.g., DeMarco v. CooperVision, Inc.*, 369 Fed. Appx. 254, 255-56 (2d Cir. 2010) (holding that a then-pregnant plaintiff had not been "replaced" by another individual already employed by her employer when among other things that inidivual "absorbed some of [the plaintiff's] job responsibilities during [the plaintiff's] absence, but ... did not assume all of them, nor was ... given the same job title" as the plaintiff).

The Court need not decide this issue, however, because even assuming *arguendo* that Plaintiff *were* able to make out a prima facie case for age discrimination, Defendant has met its burden of production in proffering a legitimate non-discriminatory reason for terminating Plaintiff

and for any other alleged adverse employment actions by claiming that Plaintiff's performance was inadequate.

**B.    Defendant's Proffering of a Legitimate and Non-Discriminatory Reason for Plaintiff's Termination and Other Adverse Employment Actions**

The Court finds that Defendant has articulated legitimate and non-discriminatory business reasons for all of the actions which Plaintiff articulates in his ADEA discrimination claim. Defendant claims that "Plaintiff was terminated due to poor performance," that Plaintiff "failed to take any initiative and make any effort to increase his marketing activity after expectations were raised in May 2009," that "Plaintiff recorded the third lowest number of marketing visits in his department for the fourth quarter and recorded the lowest total number of visits for the entire year among his peers," that "during 2009 Plaintiff made numerous mistakes and failed to recognize important issues facing his clients, thus demonstrating to Mr. Schriber that Plaintiff was a poor performer," and that in aggregate "[t]his clearly justifies terminating Plaintiff's employment." [Doc. 56] at 28-29.  Plaintiff's job performance is also the reason Defendant puts forth for any other claim of adverse employment action brought by Plaintiff.[4]

As the Second Circuit noted over a decade ago, poor job performance is "no doubt ... a legitimate nondiscriminatory reason for ... termination." *Sutherland v. New York State Dept. of Law*, No. 99-9086, 2000 WL 730413 at *3 (2d Cir. June 2, 2000).  Similarly, this district held in 2005 that "[a]n employer's dissatisfaction with the quality of an employee's work is a legitimate nondiscriminatory reason" for adverse employment actions. *Bogues v. Town of Trumbull*, 383

---

[4]    The one possible exception to this is Plaintiff's office space reassignment, which Defendant states was required so particular team members could be better situated with respect to one another.  The Court also, however, finds this proffered reason to be on its face both legitimate and non-discriminatory.

F.Supp. 2d 348, 356 (D.Conn. 2005). The court consequently finds that Defendant has sufficiently met the second prong of the *McDonnell Douglas* burden-shifting paradigm.

### C. Whether Plaintiff Has Demonstrated Defendant's Proffered Reason Was Pretextual

Given that the Court finds that Defendant has met its burden of proof with respect to the second prong of the *McDonnell Douglas* test, Plaintiff "must therefore present evidence from which a fact-finder could reasonably conclude that [Defendant's] reason was pretextual and that the real reason was discrimination." *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d at 317. "Pretext is evaluated on a case-by-case basis," and "[a]n employer [is] entitled to judgment as a matter of law if the record conclusively reveals some other nondiscriminatory reason for the emloyer's decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." *Bogues v. Town of Trumbull*, 383 F.Supp. 2d 348, 356 (D. Conn. 2005) (quoting *Reeves v. Sanderson Plumbing Prod. Inc.*, 530 U.S. 133, 143, 148 (2000)).

Plaintiff raises several examples of instances in which he claims that his age was a factor in Defendant's employment decisions, and, accordingly, that the reasons Defendant has articulated for his termination and other allegedly adverse employment actions were pretextual, including that Plaintiff's immediate supervisor defended Plaintiff's performance "at the risk of losing his own job" in communications concerning Plaintiff's 2009 performance review [Doc. 57] at 13; that Plaintiff "can demonstrate there were no performance problems," *id.* at 17; that Plaintiff was "intentionally prevented from obtaining marketing visits," *id.* at 19; that Plaintiff's "supervisors admitted bias," *id.* at 21; and that Defendant used a "fabricated performance review ... to discriminate and terminate"

Plaintiff, *id.* at 27.

The Court finds, however, that Plaintiff does not provide any evidence that allows these claims to rise beyond a level of conclusory allegation or weak issue of fact. Simply put, Plaintiff cannot even show that his age made a difference in the employment actions with which his Amended Complaint is concerned. Thus while the Court is sympathetic to Plaintiff's claims, under the standards by which it must evaluate them the Court finds that Plaintiff does not and cannot meet the third prong of the *McDonnell Douglas* test, and therefore that his ADEA claim must be dismissed. The Court will now address the primary arguments Plaintiff raises with respect to his ADEA claim.

1.    **Plaintiff's Performance and Defendant's Assessments Thereof, Including Plaintiff 2009 Performance Review**

In support of his contention that his immediate supervisor Gordon Olver had defended his performance in order "to protect and aid" Plaintiff "against the unfounded and baseless performance accusations being fabricated" by others within Defendant's employ, including Schriber and Madsen, Plaintiff states that "Olver's true opinion of [Plaintiff's] 2009 performance can be seen in [an early draft of] the November 15, 2009 performance review," which Olver had prepared and shared with Schriber. [Doc. 57] at 13. However, by Plaintiff's own admission Olver himself "stated he did not even consider the risks to his own employment." [Doc. 57] at 14. Further, even if it were true that Olver risked his job to defend Plaintiff – and given the evidence before it the Court does not find this to have been likely – there is nothing in the record to suggest that any aspect of Schriber's communications with and to Olver concerning Plaintiff's 2009 performance review were motivated by or in any way related to Plaintiff's age.

For example, in an email dated November 22, 2009, Schriber responded to an email Olver

had sent on November 17, 2009 to which Olver had attached Plaintiff's initial draft performance evaluation, and in which Olver had given Plaintiff ratings mainly of "3," meaning "satisfactory," or "2," meaning "exceeds expectations." [Doc. 56-12] at 4-5. Schriber told Olver that he and Olver needed to discuss this draft evaluation, as Schriber did not "see any way" Plaintiff's performance could "not be lowered in several categories," nor did he "agree with many of the things written in the Performance Summary." *Id.* at 2. Ultimately, Schriber stated that he felt Plaintiff's performance warranted an overall rating of "4," which was termed "developmental," and which meant that while an employee "carrie[d] out [his] responsibilities, improvement [was needed] in key areas," and that both "close supervision and follow up" were required. *Id.* at 4.

Schriber included several supporting reasons illustrating the reasoning behind his expressed viewpoint, all of which were firmly rooted in what in his perception was Plaintiff's poor job performance and none of which in any way implicated Plaintiff's age. *Id.* at 2. With respect to one client account, Schriber wrote of his concern that Plaintiff's "delay in pace of play (getting to [the] bottom of [a] claim that appeared to be in error) cost a chance to position for better terms." *Id.* With respect to another client account, Schriber wrote that while there had been "a clear exposure on a new program" the client company was then adding, which concerned sexual abuse, "nobody ask[ed] to review their form, instead opting to ask cursory questions which clearly were incorrectly asked or answered or both," and then to compound the problem Plaintiff had "merely passed [the form] along to our claims department – not noticing that this form contradicted what Plaintiff and [another employee] had told [Schriber] in the referral days earlier." *Id.*

In the same email, Schriber wrote: "To state in [Plaintiff's] review that 'his marketing activity increased during the 3rd quarter' seemingly gives him credit while ignoring the fact that nothing was

done prior to the 3rd quarter ... His visibility being up from virtually zero does not make it satisfactory." *Id.* In addition, Schriber addressed Olver's drafted statement that Plaintiff could be relied on to work independently, writing to Olver: "I had spoken with you a year ago about not looking over [Plaintiff's] shoulder as much – he should be expected to handle [accounts] on his own. Many examples above to question whether he is truly doing that – or doing it well." *Id.* Schriber added "[d]itto for the satisfactory '3' grade on the Quality part of Functional Expertise," and concluded to Olver that, so Schriber and Olver were "clear, this is NOT a case of raising the bar to unreasonable levels. Communication has been clear on the marketing issues all year ... In short, I see his overall grade at 4 – not 3 – plenty needs improvement here." *Id.* (emphasis in original). The Court finds nothing within this email exchange between Schriber and Olver, on which Plaintiff heavily relies in order to demonstrate an age bias in the adverse employment actions to which his ADEA claims pertains, that in any way suggests that Plaintiff's age was a factor rather than his supervisors' perceptions of Plaintiff's performance.

The Court notes as well that along other evidence submitted, Defendant has included an affidavit from Craig Johnson, who was, until his voluntary retirement in 2008, employed by Defendant as President and Chief Executive Officer (the position then taken by Schriber). In this affidavit, Johnson stated that "as part of [his] duties and responsibilities, [he] periodically interacted with [Plaintiff] and observed [Plaintiff's] job performance," and in Johnson's opinion, Plaintiff's "performance was generally below average, with some areas of needed improvement." [Doc. 56-6] at 2. Specifically in Johnson's estimation, which seems to echo Schriber's, "[o]ne of the areas which needed improvement was in his marketing initiatives." *Id.* Similarly, Johnson addresses an email sent to him by Olver, which is attached to Johnson's affidavit, in which he states that Olver, "in

recognition of the fact that there were deficiencies in [Plaintiff's] performance, recommended a below average raise and/or bonus for [Plaintiff]. While the recommended raise and/or bonus was already below average, based on [Johnson's] view of [Plaintiff's] performance," Johnson explains that he then "recommended an even lower raise and/or bonus, as the annexed email reflects." *Id.* at 2-3.

The email Johnson addresses in his affidavit concerns Olver's own thoughts about Plaintiff's salary increase as of January of 2008, in which Olver explains to Johnson that Olver's recommendation that Plaintiff's "salary recommendation being below the average was, in part, a recognition that while [Plainitff] is a steady contributor, there are still some weaknesses, in my opinion, relative to others at the same level." *Id.* at 4. Neither this email nor Johnson's affidavit mention or make reference to Plaintiff's age. Moreover, both this email and Johnson's affidavit tend to suggest that several of Plaintiff's supervisors had had ongoing concerns with respect to aspects of Plaintiff's job performance. Plaintiff repeatedly and in detail denies such a suggestion in his briefing, arguing that he had a prior history of good performance in his role as an employee of Defendant. However, even if this were true, and Defendant avers that it is not – and the evidence, as discussed, supports Defendant's contention – as this district has stated, the mere fact that "Plaintiff's past supervisors may have been satisfied with [his] work ... provides no guarantee that future supervisors would evaluate [his] work the same way." *Soderberg v. Gunther Intern., Ltd.*, No. 3:02-CV-02010, 2004 WL 57380 at *3 (D.Conn. 2004).

Plaintiff similarly puts forth reasons why the evaluations of his job performance were flawed, contending that his performance in 2009 was significantly better than Defendant's assessment thereof. Plaintiff also alleges that there is evidence of age bias because, he claims, the process

Schiber and Olver used in formulating this evaluation deviated from Defendant's performance review and supervisor training guidelines, something which Defendant disputes, arguing that the guidelines were merely guidelines, and "each manager had discretion as to how to handle an employee's performance issues on a case by case basis." [Doc. 68] at 10. However, even "[a]ssuming *arguendo* that Defendant's proffered reasons" for the adverse employment actions "were petty, ridiculous, and unfair, ... it is hard to see how this would add much of significance to [Plaintiff's] case." *Soderberg v. Gunther Intern., Ltd.*, No. 3:02-CV-02010, 2004 WL 57380 at *5 (internal quotation marks and citation omitted). Discrediting an employer's proffered reason requires more than merely a showing that "the employer's decision was wrong or mistaken, since the factual dispute at issue is *whether a discriminatory animus motivated the employer*, not whether the employer is wise, shrewd, prudent or competent." *Colton v. Corporation for Justice Management, Inc.*, 542 F.Supp.2d 197, 204 (D.Conn. 2008) (emphasis added) (citation omitted). This is because the ADEA "does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their age." *Id.* (internal quotation marks and citation omitted). Accordingly, "[a] plaintiff may not survive a motion for summary judgment by merely suggesting that the defendant's proffered reasons for discharge are false," and even if these proffered reasons were "rejected entirely, Plaintiff must produce evidence from which a reasonable factfinder could infer that a discriminatory motive played a role in [his] discharge." *Id.* (citations omitted).

Thus for the purposes of this ADEA inquiry, the Court need not and does not determine exactly how well Plaintiff performed at his job; it merely must determine, at this point in its evaluation of Plaintiff's claim, whether Plaintiff can demonstrate that Defendant's explanation for the adverse events is pretextual, and that the real reason for the adverse events is in truth due to

Plaintiff's age. Nothing in the evidence demonstrates that Plaintiff's 2009 evaluation, or any of Plaintiff's other performance evaluations, were in any way impacted by Defendant's considerations of Plaintiff's age.

### 2. Plaintiff's Claim of Admitted Supervisor Bias

Plaintiff also alleges that there is evidence of admitted age-related bias on the part of Plaintiff's supervisors, and points to examples of Schriber allegedly not wanting Plaintiff to represent Defendant to clients, because, Plaintiff claims, Schriber felt that Plaintiff did not give clients a good impression of the company. [Doc. 57] at 21-22. Plaintiff further contends that Schriber made a comment that Plaintiff had poor knowledge of his accounts, which Plaintiff took to be an ageist comment. *Id.* at 22. Plaintiff also cites alleged comments by Schriber concerning Plaintiff's lack of energy and the need for employees to have fire in their bellies. *Id.* at 25. Assuming *arguendo* that such comments were made, the Court finds that they are in line with Schriber's assessments of Plaintiff's job performance, along with the assessments articulated by Olver, Johnson, and other witnesses. Further, the Court fails to find that Schriber's comments were specifically age-related. *See, e.g., Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 314-318 (holding that there was no triable issue of fact concerning age discrimination under the ADEA when, among other things, a plaintiff's supervisor "told her that he felt she lacked energy.")

Plaintiff additionally avers that Olver, who was, the Court notes, himself in his fifties throughout the relevant period, made a statement to Plaintiff, then in his early sixties, that Defendant "was no place for anyone in their [fifties]" – a claim which Olver has denied making.[5] *See, e.g, id.* at

────────────────────

[5] The Court notes that Plaintiff repeatedly avers that Olver's alleged statement was a "statement against interest," and cites Fed. R. Evid. 804(b)(3) in support of such a proposition. *See, e.g.,* [Doc. 57] at 22. However, as Defendant correctly contends, this Rule of Evidence,

22 (acknowledging that Olver denies Plaintiff's claim); [Doc. 69] at 10 (in which Defendant concurs that Olver "denied making the statement 'this was no place for anyone in their fifties'" or "any statement similar to that one" and denies and disputes any allegation that such a statement, even if made, would constitute evidence of age discrimination).  Plaintiff also claims that Olver made several jokes about Plaintiff's age over the years during which Plaintiff was employed by Defendant, once declaring that Plaintiff was the definition of an optimist because Plaintiff had adopted a child and would be in his seventies when that child graduated from high school and college, and another time saying that Plaintiff was alive when the Magna Carta was created.  Plaintiff also asserts that prior to his termination, Olver asked Plaintiff about his retirement plans. [Doc. 57] at 22.

However, Plaintiff has elsewhere asserted that Olver defended Plaintiff at the risk of his Olver's own job (something Olver and Defendant dispute), that Olver "refuted each and every one of [Schriber's] complaints" regarding Plaintiff's 2009 job performance and "each and every complaint that ... Schriber had had as respects [Plaintiff]," and that "the final appraisal" Plaintiff was given by Olver in his 2009 performance evacuation "was not the one that [Olver] had given to ... Schriber ... and that [Olver] had been told to change the ratings on the appraisal to conform with ... Schriber's desires." [Doc. 56-2] at 42-43.  Further, it appears that it was Schriber, and not Olver, who ultimately made the decision to terminate Plaintiff's employment.

This Circuit "ha[s] long held that stray comments," including "isolated derogatory remarks[s]," to the extent that Olver's comments even were such, "do not create an *inference* of

---

concerns an exception to the general evidentiary rule against hearsay, and is *relevant only when a declarant is unavailable as a witness.  See* Fed. R. Evid 804(b) ("The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness...").  This Rule is therefore inapplicable in this circumstance.

discrimination," *Dixon v. International Federation of Accountants*, 417 Fed. Appx. 107, 110 (2d Cir. 2011) (emphasis added) (citation omitted), much less demonstrate that a Defendant's proffered reason was pretextual. "The more remote and oblique [such] remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination. For example, remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by discrimination." *Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (citations omitted). Moreover, "[s]tray remarks, *even if made by a decision maker*," which Plaintiff does not appear to contend Olver was, at least within the context of Plaintiff's termination, "do not constitute sufficient evidence [to support] a case of employment discrimination." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (emphasis added).

The same legal analysis applies to Plaintiff's claims concerning an email sent from Fred Madsen to Schriber, in which Madsen indicated that he would not be attending another employee's retirement party, but that Schriber should "[l]et [Madsen] know when [Plaintiff's] retirement party is, though," since Madsen "might show up for that one." *See, e.g.*, [Doc. 56-2] at 192. Plaintiff claims that this email indicates that Madsen felt that Plaintiff was "an old guy that's going to be retiring," and demonstrates age bias since Plaintiff had not "given[n] any indication to anybody that [he] felt like retiring." *Id.* at 193. Madsen has testified that Schriber and Schriber alone "made the decision to terminate" Plaintiff, [Doc. 56-3] at 4, and therefore claims that he was not a decision-maker on that issue. Madsen and Defendant have also denied that his emailed statement was in any way related to Plaintiff's age, but was rather was a sarcastic acknowledgment on Madsen's part of Schriber's feelings about Plaintiff's job performance, and an indication that Madsen "expect[ed] that

[Plaintiff] would be terminated by Mr. Schriber." *See* [Doc. 56] at 21. While the Court does not find this email to be in particularly good taste, it also does not find it to constitute anything more than, at most, a stray remark.

The Court similarly finds with respect both to the rest of Plaintiff's claims regarding Defendant's new marketing initiative, announced in May of 2009, and to Plaintiff's forced office space move later that calendar year, that there is simply insufficient evidence provided in order to support any claim made by Plaintiff that these occurrences, while they may have been unpleasant for Plaintiff, were specifically age-related. The decisive question in such an inquiry is whether Plaintiff has presented contradictory evidence of such quality "that a reasonable jury could return a verdict for the non-moving party," *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The question, then, is whether a reasonable jury, properly instructed in the law by the trial judge, could find based upon the evidence Plaintiff has provided that the proffered reason Defendant has offered for Plaintiff's adverse employment actions was pretextual. In the context of a trial Plaintiff would have the burden of proof on this issue.

The Court does not in any way doubt the sincerity of Plaintiff's personal conviction that his termination was both wrongful and undeserved. However, the Court's function at the summary judgment stage is to consider all the evidence elicited during discovery and then to determine whether, in the context of a trial, Plaintiff could sustain his burden of persuading a reasonable jury that Defendant's proffered explanation was pretextual, assuming *arguendo* that Plaintiff succeeded in setting out a prima facie case. If a Court finds that "a jury would have to engage in impermissible speculation to conclude that [Defendant] terminated [P]laintiff" or otherwise engaged in allegedly adverse employment actions for unpermitted and discriminatory reasons, the Court must conclude

that summary judgment in favor of the Defendant would be proper. *See Vandenbroek v. PSEG Power, CT LLC*, 356 Fed. Appx. 457, 461 (2d Cir. 2009). After carefully considering all the evidence and briefing that has been submitted in this matter, and given this Circuit's clear precedents and rules, this Court is constrained to hold that a reasonable trial jury would be unable to find that Defendant's proffered legitimate reason for terminating Plaintiff, and for any other adverse employment action Plaintiff has claimed in his briefing, was pretextual, and that the real reason for these actions – or even a motivating reason or a reason that made a difference – was age discrimination.

Accordingly, Defendant is entitled to summary judgment as a matter of law, and the Court dismisses with prejudice and without costs the First Count of Plaintiff's Amended Complaint for Age Discrimination. Plaintiff's Motion for Summary Judgment is therefore denied as to Count One of Plaintiff's Amended Complaint for Age Discrimination.

## V.     Plaintiff's State Law Claims

In addition to Plaintiff's federal law ADEA claims, Plaintiff also brings three state law claims in his Amended Complaint: Intentional Infliction of Emotional Distress (Court Two); Breach of the Covenant of Good Faith and Fair Dealing (Count Three); and Age Discrimination Pursuant to Connecticut's Fair Employment Practices Act (Count Four).

As the late Judge Kravitz noted only last year, "this Court is reluctant to exercise supplemental jurisdiction in non-diversity cases," *Bellamy v. General Dynamics Corp.*, 2012 WL 1987171 at *7 (D. Conn. June 4, 2012), given that under 28 U.S.C § 1367(c) and (c)(3), United States "district courts may decline to exercise supplemental jurisdiction over a claim" if they have "dismissed all claims over which [they] ha[d] original jurisdiction." 28 U.S.C. § 1367(c) and (c)(3)

(cited in *Bellamy v. General Dynamics Corp.*, 2012 WL 1987171 at *7).  Indeed, in recently citing and interpreting 28 U.S.C.A. § 1367(c) and (c)(3), the Second Circuit noted that "[a]lthough federal courts *may* exercise jurisdiction over related state-law claims where an independent basis of subject-matter jurisdiction exisits, such a court may, for various reasons, nonetheless" decline to do so. *Oneida Indian Nation of New York v. Madison County*, 665 F.3d 408, 436 (2d Cir. 2011) (emphasis added) (internal citation omitted).  The Second Circuit further explained that such "discretion is ... subject to boundaries," and that "if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well."  *Id.* at 437 (internal citations and some quotation marks omitted) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009) and *Brzak v. United Nations*, 597 F.3d 107, 113-114 (2d Cir. 2010)).

In light of these recent rulings, this Court will not evaluate any of Plaintiff's state law claims. The Court does, however, question whether Plaintiff could effectively state a CFEPA claim on the evidence provided; however, as did Judge Kravitz in *Bellamy v. General Dynamics Corp.*, 2012 WL 1987171 at *7, this Court leaves such an inquiry and determination to the state courts.

## VI.    Conclusion

For the forgoing reasons, Defendant's Motion for Summary Judgment [Doc. 53] is GRANTED with respect to Count One, i.e., the federal ADEA claim.   The Clerk is directed to dismiss this Count with prejudice and without costs.

As for Counts Two, Three, and Four, these are state law claims and the Court declines to accept jurisdiction over them. The Clerk is directed to DISMISS those Counts without prejudice and without costs.

Plaintiff's Motion for Summary Judgment [Doc. 50] is DENIED in its entirety.

The Clerk is then directed to close the case.

It is SO ORDERED.

Dated:  New Haven, Connecticut
        September 12, 2013

                                        /s/ Charles S. Haight, Jr.            _
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge